## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 24-0115-04 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| CODY GIBSON (04) | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court is a post-verdict motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c) filed by Defendant Cody Gibson ("Gibson"). Record Document 336. Gibson argues there was insufficient evidence for a rational trier of fact to find him guilty of the charged offenses. *See id.* The Government opposes Gibson's motion. Record Document 349.

For the following reasons, Gibson's motion [Record Document 336] is **DENIED**.

### Background

On May 22, 2024, Gibson and eleven codefendants were charged in a thirteen-count indictment. Record Document 1. Gibson was charged in Counts One and Six. *See id.* Count One charged that between approximately November 1, 2023, and February 14, 2024, Gibson and his coconspirators conspired to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 1. The indictment alleged that the quantity of methamphetamine involved in the conspiracy attributable to Gibson was five grams. *Id.* at 2. Count Six charged that on or about January 18, 2024, Gibson knowingly possessed with intent to distribute five grams or

more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). *Id.* at 4.

On April 14, 2025, Gibson and one codefendant proceeded to trial. After the Government rested its case-in-chief on the second day of trial, Gibson made an oral motion for a judgment of acquittal, which the Court denied. Record Documents 319 & 322 at 2. After the close of evidence on the same day, Gibson re-urged his motion for a judgment of acquittal, which the Court again denied. Record Documents 321 & 322 at 2. The next day, the jury returned a verdict as to Gibson, finding him guilty on both Counts One and Six. Record Document 332.

## Law & Analysis

### I.     Federal Rule of Criminal Procedure 29

The standard for evaluating a defendant's motion for acquittal is whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Thus, the Court's task at this stage is to view not only the evidence, but also all reasonable inferences and credibility determinations, in the light most favorable to the Government. *See United States v. Mendoza*, 522 F.3d 482, 488 (5th Cir. 2008). "In effect, the court assumes the truth of the evidence offered by the prosecution." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 1997).

In conducting this analysis, the Court reviews the sufficiency of circumstantial evidence in the same manner that it reviews the sufficiency of direct evidence. *See United*

*States v. DeJean*, 613 F.2d 1356, 1358 (5th Cir. 1980). Moreover, "[a]ll evidence is considered, not just that supporting the verdict, but the evidence need not conclusively disprove alternatives; the jury is free to choose among reasonable constructions of the evidence." *United States v. Peterson*, 244 F.3d 385, 389 (5th Cir. 2001) (internal marks and citation omitted). "The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt . . . ." *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996), *abrogated on other grounds.*

"[C]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof." *United States v. Vasquez*, 677 F.3d 685, 692 (5th Cir. 2012) (quoting *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989)). "Jurors may properly 'use their common sense' and 'evaluate the facts in light of their common knowledge of the natural tendencies and inclinations of human beings.'" *Id.* (quoting *Ayala*, 887 F.2d at 67).

Therefore, this Court will not weigh the evidence or assess the credibility of witnesses but will determine "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence." *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995); *Lopez*, 74 F.3d at 577. However, "[a] verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011).

## II. Analysis

In the instant case, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in support thereof, the Court finds there was sufficient evidence to support Gibson's conviction as to both counts. Because Count Six serves as a predicate for Count One, the Court first addresses Count Six.

### A. Count Six

Count Six charged that on or about January 18, 2024, Gibson knowingly possessed with intent to distribute five grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii). Record Document 1 at 4. To prove Gibson's guilt as to this count, the Government was required to prove the following beyond a reasonable doubt: (1) that the defendant knowingly possessed a controlled substance; (2) that the substance was in fact methamphetamine; (3) that the defendant possessed the substance with the intent to distribute it; and (4) that the substance was at least five grams. *See* 5th Cir. PJI 2.95A; *see also United States v. Silva-De Hoyos*, 702 F.3d 843, 848 (5th Cir. 2012).

Gibson argues that the Government failed to meet its burden as to Count Six. Gibson concedes that a reasonable juror could have found that he engaged "in multiple drug conversations and perhaps in multiple drug deals" with codefendant Demetric Carey ("Carey").[1] Record Document 336 at 3. However, Gibson argues that the Government

---

[1] Carey was the first named defendant in the indictment in this matter, charged in Counts One, Two, Three, Four, Six, Seven, and Eight. *See* Record Document 1. Trial testimony established that Carey sold narcotics out of his business to several people, including Gibson.

4

failed to marshal sufficient evidence to show that the substance that was the subject of those drug deals was in fact methamphetamine. *Id.* at 2-3. In support of this argument, Gibson argues that Carey dealt in multiple types of narcotics. *Id.* Gibson further argues that he and Carey did not specifically mention methamphetamine by name or any known code word during their Title III communications, there were no set prices or quantities for any controlled substances sold by Carey, and no methamphetamine was recovered from Gibson. *Id.*

At trial, the Government offered sufficient evidence for a rational juror to find beyond a reasonable doubt that the drug Gibson possessed with intent to distribute was methamphetamine. Specifically, the Government offered evidence of: phone and text conversations between Gibson and Carey; records of CashApp payments from Gibson to Carey; video footage of what appeared to be a hand-to-hand drug transaction between Gibson and Carey on January 18, 2024; statements from Carey to another codefendant that he had just sold methamphetamine soon after the January 18, 2024, hand-to-hand transaction; and clips from a jailhouse phone call from Gibson to an unidentified male.

The Court first recounts the evidence of the communications between Gibson and Carey. During their conversations, Gibson and Carey commonly referred to a "zip" or a "whole one." There were also many CashApp payments sent from Gibson to Carey. Testimony from Officer Shawn Jenkins ("Officer Jenkins") established that the words "zip" and "whole" are terms commonly used to refer to one ounce of narcotics. Testimony from Officer Jenkins also established that Carey sold marijuana for about $120.00-150.00 per

5

ounce, and he sold methamphetamine for about $350.00 per ounce, although the price varied.

On a November 11, 2023, Title III monitored phone call, Gibson requested a "whole one" from Carey. Also on November 11, 2023, during another monitored phone call from Carey to Andrew Martin ("Martin"), a neighbor of Gibson, Carey and Martin discussed Gibson. Government Exhibit 018-001.[2] Carey told Martin that Gibson "probably wants this zip." *Id.* Martin then said that Gibson does not trust him because Gibson believes Martin is working with law enforcement. Martin then said that Gibson "still got that zip." *Id.*

On a December 1, 2023, recorded phone call, Gibson made another request to Carey, saying that he wanted to "see if [he] could do a little something." Government Exhibit 024-001. Carey and Gibson briefly debated how much Gibson still owed Carey for the "whole" he recently purchased. *Id.* Then, Gibson and Carey planned to meet up at Chevron. *Id.* Before he arrived, Gibson told Carey he would send him $170.00 on CashApp and send him the rest of the money later. Government Exhibit 033-001. Gibson sent Carey $170.00 via CashApp. Record Document 327-10 at 6.

Then, on December 3, 2023, Carey texted Gibson: "U forgot bout me[.]" Record Document 327-8. On the same date, Gibson responded to Carey: "I ain't forgot about u I'm trying to load it to cash app now I'm gone send it to u[.]" Record Document 327-9.

---

[2] The recordings of Gibson's phone conversations and the surveillance footage of his hand-to-hand drug transaction were admitted as manual attachments. The Court refers to these exhibits by their government exhibit number only. For a list of all exhibits, including manual attachments, see Record Document 327.

Shortly thereafter, on the same day, Gibson sent Carey $158.00, with a message that reads "owe u 22[.]" Record Document 327-10 at 6. Therefore, in total, Gibson appears to have paid $350.00 total for a "whole."

In addition to this transaction, Gibson paid Carey approximately $350.00 several other times. For example, Gibson paid Carey $350.00 on October 26, 2023, December 14, 2023, and January 5, 2024; $351.00 on January 10, 2024; and $355.00 on November 2, 2023. *Id.* On December 29, 2023, Gibson paid Carey $200.00 with a message that reads, "still owe u 150 should have it to u by lunch tommo[.]" *Id.* On November 16, 2023, Gibson paid Carey $305.00 with a message that reads "I'll send the other this evening when I get off I[.]" *Id.* Gibson then sent two payments of $50.00 on November 22, 2023. *Id.* These numerous $350.00 payments correspond with the typical price for one ounce of methamphetamine.

This history of transactions provides context for the charged instance of possession with intent to distribute methamphetamine on or about January 18, 2024. Trial testimony and evidence established that the January 18, 2024, transaction occurred as follows. On January 17, 2024, at 6:59 p.m., Gibson texted Carey: "Let me hold something till tomorrow[.]"[3] Record Document 327-3. The next day, January 18, 2024, Gibson texted Carey again: "I got money wat up[.]" Record Document 327-4. Later that day, around 1:10 p.m., Gibson and Carey had another recorded phone conversation about how Gibson

---

[3] Testimony from Officer Jenkins established that asking to "hold something" generally means that a purchaser wants to receive drugs without paying the full balance until it is sold to others. In other words, the purchaser may pay half the typical amount for an ounce, resell all or some of the ounce to others, then pay the remainder using the proceeds from the subsequent sale.

7

would pay Carey since Carey's CashApp was not working. Gibson agreed to meet Carey at Bank One. Government Exhibit 019-001. At approximately 1:26 p.m., Carey talked to an unidentified male on a Title III phone call, and Gibson can be heard in the background of the phone call. Government Exhibit 020-001.

The Government offered surveillance footage of Gibson and Carey's January 18, 2024, meet-up. *See* Government Exhibit 025-001. The surveillance video shows two vehicles pulling up driver door-to-driver door. Officer Josh McCormick ("Officer McCormick") identified the driver of each vehicle as Gibson and Carey. Money appears to change hands. Then, Carey hands Gibson a small package, approximately the size of a cigarette box. *Id.* Officer McCormick testified that a box of that size is generally consistent with methamphetamine. Later on January 18, 2024, at approximately 2:00 p.m., Carey was overheard on a recorded call with another coconspirator saying he "just . . . made a band. Zip of Ice." Government Exhibit 021-001. Testimony established that "ice" is a word commonly used to refer to methamphetamine.

On cross-examination, Gibson's counsel elicited testimony that law enforcement could not confirm what was in the box handed to Gibson on January 18, 2024. However, given the amounts of money Gibson consistently paid to Carey, the history of transactions between Gibson and Carey, and the video surveillance of the transaction—particularly, the size and character of the box exchanged—a reasonable juror could have concluded beyond a reasonable doubt that the substance Gibson purchased was in fact methamphetamine. As discussed *supra*, the court views all reasonable inferences in the light most favorable to the Government and to the verdict. *See Mendoza*, 522 F.3d at

488. "[T]he jury is free to choose among reasonable constructions of the evidence." *Peterson*, 244 F.3d at 389.

Finally, in addition to the evidence the Government presented as to the drug transactions between Gibson and Carey, the Government also introduced clippings of a jail phone call made by Gibson to an unidentified male ("UM") on June 7, 2024, after his arrest. Government Exhibit 046-001. The conversation is heard as follows:

UM: They got you dead in the water or what?

GIBSON: Not really but in a sense, you know what I mean I don't want to say too much.

UM: Right.

GIBSON: Yeah. What I seen so far yeah they, aint no denying it you know what I mean.

UM: Right, right.

GIBSON: But I mean it aint, it aint no distro, it just conspiracy shit you know fucking hearsay shit. Mother fucker.

UM: Fuck man.

*Id.* Officer Jenkins testified that earlier on the same week of Gibson's jail phone call, there was a Court hearing during which Gibson was informed of all charges against him. Gibson's statements on the jail phone call could indicate that Gibson himself believed that after his arrest, there was sufficient evidence to convict him, and could further support a rational juror in finding beyond a reasonable doubt that Gibson was guilty as to Count Six.

The Court briefly notes that while Gibson did not challenge the sufficiency of the evidence as to the other elements of Count Six, the Government did proffer sufficient

9

evidence as to each of the other elements of this count. Gibson knowingly possessed a controlled substance, as established through his numerous requests to Carey and meetups with Carey to request and purchase methamphetamine. Gibson's intent to sell can be presumed based on the quantity of controlled substance he purchased. *United States v. Lopez*, 979 F.2d 1024, 1031 (5th Cir. 1992) ("[T]he jury could infer the intent to distribute from possession of a large amount of drugs."). Gibson regularly requested ounce quantities of methamphetamine. One ounce is equivalent to approximately 28.35 grams, and trial testimony from Officer Jenkins established that the average methamphetamine user can only use about one-half to one gram per day. Therefore, it would take the average user approximately twenty-eight to fifty-six days to use an ounce of methamphetamine. Gibson's requests and CashApp payments indicate that he was purchasing more than one ounce per month.

Viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences in support thereof, the Court finds that there was sufficient evidence to support Gibson's conviction as to Count Six.

### B. Count One

Count One charged Gibson with conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii) and 846. Record Document 1 at 1-2. To prove Gibson's guilt as to this count, the Government was required to prove the following beyond a reasonable doubt: (1) that two or more persons, directly or indirectly, reached an agreement to distribute and possess with intent to distribute methamphetamine; (2) that the defendant knew of the

unlawful purpose of the agreement; (3) that the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; (4) that the overall scope of the conspiracy involved at least five grams of methamphetamine; and (5) that the defendant knew or reasonably should have known that the scope of the conspiracy involved at least five grams of methamphetamine. *See* 5th Cir. PJI 2.97; *see also United States v. Lara*, 23 F.4th 459, 470-71 (5th Cir. 2022).

As to this count, Gibson argues that no reasonable juror could have found that the Government met its burden as to the fifth element, that is, that Gibson knew or reasonably should have known that the scope of the conspiracy involved at least five grams of methamphetamine. Record Document 336. Gibson argues that even assuming *arguendo* that he did purchase one ounce of methamphetamine from Carey on the date alleged in Count Six, that ounce of methamphetamine "would have to have been more than 17.5% pure to equal 5 grams or more of pure methamphetamine." *Id.* at 4. Gibson argues that the Government made no attempt to prove that the quantity of drugs at issue amounted to five grams or more. *Id.* at 4-5.

But Gibson's arguments are plainly contrary to the evidence presented at trial. As explained *supra*, there was sufficient evidence for a rational juror to find that Gibson purchased one ounce (or approximately 28.35 grams of methamphetamine) from Carey on January 18, 2024. To the extent the jury drew a conclusion as to the purity of the methamphetamine, a conclusion that the methamphetamine was sufficiently pure to constitute five grams was not plainly unreasonable. *See United States v. Hearst*, No. 21-CR-50428, 2022 WL 1421830, at *2 (5th Cir. May 5, 2022) ("In weighing the evidence,

11

the jury's ability to infer is governed by 'a rule of reason,' and the jury is permitted to use its common sense and evaluate the facts in light of its knowledge of the common tendencies and inclinations of human nature."). There was no evidence at trial suggesting that the methamphetamine was of low purity. And on a Rule 29 motion, all conclusions must be drawn in favor of the Government and in favor of the verdict. *See Mendoza*, 522 F.3d at 488.

Further, Gibson's argument relies on the one ounce of methamphetamine purchased on January 18, 2024. However, as also explained *supra*, the January 18, 2024, transaction is not the only drug transaction between Gibson and Carey. A rational juror could have easily concluded that, in addition to the January 18, 2024 purchase, Gibson purchased methamphetamine from Carey on other occasions between November 1, 2023, and February 14, 2024. For example, a rational juror could have concluded based on law enforcement testimony, Gibson's communications with Carey, and the CashApp records that each of the eight times Gibson paid Carey $350.00 he was purchasing one ounce of methamphetamine. *See* Record Document 327-10 at 6. If a juror were to conclude Gibson purchased eight total ounces, that would equate to approximately 226.80 grams of methamphetamine—which would suffice even at a marginally low purity level. Therefore, there is sufficient evidence for a rational juror to find that the Government proved beyond a reasonable doubt that Gibson knew or should have known that the conspiracy involved five grams or more of methamphetamine.

The Court again pauses to note that although Gibson does not specifically challenge the sufficiency of the evidence as to the other elements of Count One, there

was sufficient evidence for a rational trier of fact to find that the Government proved all elements of Count One beyond a reasonable doubt. Gibson and Carey's communications and various drug transactions, proven through Title III phone calls, text messages, surveillance footage, and CashApp payments evidenced that the two agreed to distribute and possess with intent to distribute methamphetamine. There is no question that Gibson knew of the unlawful purpose of the agreement or that he joined the agreement willingly. Indeed, Gibson regularly initiated conversations with Carey to purchase distribution amounts of methamphetamine.

Viewing the evidence in the light most favorable to the verdict, and drawing all reasonable inferences in support thereof, the Court finds there was sufficient evidence to support Gibson's conviction as to Count One.

## Conclusion

After a thorough review of the record, the Court finds there was substantial evidence from which a rational jury could conclude beyond a reasonable doubt that Gibson was guilty on Counts One and Six. Accordingly, Gibson's motion [Record Document 336] is **DENIED**.

**THUS DONE AND SIGNED** this 30th day of June, 2025.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE